**STATE of Missouri, Respondent,**

v.

**Ezra Owen DAVIS, Appellant.**

**No. 56633.**

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

John L. Sullivan, St. Louis, appointed counsel for defendant.

WELBORN, Commissioner.

Appeal from 15-year sentence on jury verdict finding Ezra Owen Davis guilty of robbery in the first degree by means of a deadly weapon. The punishment was fixed by the court when the jury could not agree on the punishment.

At around 2:00 P.M. on July 14, 1970, Debra Love and her sister, Jessie, were among the passengers on a Lee Avenue bus, operated by the Bi-State Transit Authority, traveling on 20th Street in the City of St. Louis. The bus stopped at a bus stop in the vicinity of the Pruitt-Igoe housing project and three boys carrying handguns boarded the bus. One of them pointed his weapon at the driver and announced a holdup and told the passengers to place their purses in the aisle. Debra and Jessie were on a seat immediately behind the driver. Jessie who was carrying Debra's purse placed it on the floor of the bus at Debra's feet. One of the robbers picked it up. The robbers fled taking Debra's purse and the purses of other passengers.

Ezra Owen Davis was arrested by police on suspicion that he was involved. He was released when evidence to support charges against him was insufficient. He told the police that he perhaps could assist them and went to the juvenile detention center to view a lineup of suspects. Debra and the bus driver saw Davis at the detention center and both recognized him as the person who held the gun on the driver. Both identified Davis at his trial on the charge.

Appellant's first two points on this appeal are interrelated. He argues that there was a fatal variance between the information which charged that the purse was tak-

en from the person of Debra and the proof which showed that Jessie was in possession of the purse when the holdup was announced and that Jessie was the person who surrendered its possession at the direction of the robbers. He also contends that when the trial court attempted to remedy the situation by requiring the jury to find that the purse was taken from the person of the sister it submitted an instruction not based upon the information which charged that the purse was taken from the person of Debra.

Section 560.120, RSMo 1969, V.A.M.S., requires as elements of the offense of robbery in the first degree the felonious "taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person; * * *." The information in this case charged the taking of the purse of Debra Love "from the person and in the presence of, and against the will of, the said Debra Love * * *."

■ Under the statute, the offense of robbery may be committed in two separate ways, by taking from the person or in his presence the property of another. State v. Flynn, 258 Mo. 211, 167 S.W. 516, 518 [3]. The two methods are not repugnant and are therefore properly chargeable in a single count of an information which uses the conjunction *"and"* rather than the disjunctive "or" of the statute. Under such a charge proof of the commission of the offense by either of the methods will sustain the charge. State v. Johnstone, Mo.Sup., 335 S.W.2d 199, 203 [1, 2]; State v. Johnson, Mo.Sup., 457 S.W.2d 795, 799 [7]; State v. Craft, 299 Mo. 332, 253 S.W. 224, 277 [5].

■ The evidence here showed a taking of Debra's purse in her presence and against her will. Jessie placed the purse on the floor of the bus at Debra's feet. She was crying, scared, trembling. One of the robbers picked up the purse and it was tak-

en from the bus. The purse was within Debra's reach and she could have exercised her right to dominion over it but for the fear caused by the robbers. See 77 C.J.S. Robbery § 9, p. 455.

Therefore, accepting appellant's position that the evidence showed a taking from the person of Jessie, such variance from the charge could not have been prejudicial to the appellant inasmuch as the state's evidence, in any event, had adequately supported the charge, proof of taking from Debra's person not being essential. Appellant has not demonstrated that such variance was "material to the merits of the case and prejudicial to the defense of the defendant." Supreme Court Rule 26.04, V.A.M.R., § 546.080, RSMo 1969, V.A.M.S.

■ The principal instruction did call for a finding of taking from the person of Jessie, rather than Debra, as charged in the information. However, inasmuch as the instruction also conjunctively called for a finding of a taking in the presence of Debra, no prejudice could have resulted. The jury was required to find the essential taking from the presence of Debra, along with the other elements of violence and putting in fear. The required additional finding of taking from the person of Jessie was surplusage, having no bearing on the proof of the offense charged and in no manner burdening the defense of the cause. See State v. Hawkins, Mo.Sup., 418 S.W.2d 921, 925 [7, 8].

Two police officers testified that they conducted an investigation into the holdup which resulted in appellant's being taken into custody, interrogated and released. At the close of each of the officer's testimony, defense counsel moved that the entire testimony be stricken "as it is in no way relative to the issues raised in this proceeding" and the testimony did not connect the defendant with the case. The motion was overruled in each instance. By his motion for new trial, appellant attacked the unfavorable ruling on the grounds that it "was introduced merely to incite the

jury based on the implied fact that there was reason to charge the defendant but that for technical reasons such evidence was insufficient." On this appeal, the ruling of the trial court is urged as error on the grounds that the testimony was irrelevant and immaterial and "offered for the improper purpose of creating in the mind of the jury and opinion evidence of (sic) such police officers as to the guilt of the defendant." In addition, for the first time on this appeal, appellant in his argument singles out one item of testimony by one of the officers which he asserts was hearsay.

These varying, shifting grounds of objection at trial, assignment of error in motion for new trial and assignment of error on appeal present no basis for review in this court. State v. Washington, Mo. Sup., 320 S.W.2d 565, 568 [7, 8]; State v. Hernandez, Mo.Sup., 325 S.W.2d 494, 496 [3, 4]. The original objections related to materiality and relevancy. No suggestion was advanced that the testimony was designed to show police opinion of appellant's involvement in the crime. There is nothing in either officer's testimony which in any way intimates a technical insufficiency in the evidence which might have been cause for his originally being taken into custody. Likewise, the trial objection in no manner reflected any such complaint regarding the testimony, so that the assignment of error in the motion for new trial was wholly without basis. A new ground of error may not be here advanced. This is true particularly of the hearsay assertion, made in this court for the first time. State v. Washington, State v. Hernandez, supra.

Appellant attacks the instruction on "reasonable doubt" because of the language that "a doubt to authorize an acquittal * * * ought to be a substantial doubt touching the defendant's guilt * * *." The contention is that such language negates the requirement that acquittal should result if the jury had "reasonable doubt of

the defendant's guilt." This complaint has been frequently raised and found not meritorious. See State v. Edwards, Mo.Sup., 435 S.W.2d 1, 7 [11]. The only authority cited by appellant in support of his contention, State v. Miller, 190 Mo. 449, 89 S.W. 377, does not discuss this proposition and provides no reason for the acceptance here of this consistently rejected objection.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HOLMAN, P. J., and BARDGETT, J., concur.

SEILER, J., concurs in separate concurring opinion filed.

SEILER, Judge (concurring in result).

I concur in the result reached, but with respect to the instruction on reasonable doubt do so only for the reason that the instruction has been previously approved and so the trial court cannot be criticized for using it. Examination of some twenty or thirty decisions approving the instruction shows it is usually done without discussion of reasons or justification other than precedent, bringing to mind the words of Holmes, J., in Hyde v. United States, 225 U.S. 347, 391, 32 S.Ct. 793, 811, 56 L.Ed. 1114, ". . . It is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis . . ."

However, in the future, I would hope something could be done to eliminate from the approved instruction on reasonable

doubt the qualification that it should be "a substantial doubt touching the defendant's guilt and not a mere possibility of his innocence."

The trial court is required to instruct on reasonable doubt and once it tells the jury "The defendant is presumed to be innocent unless and until proved guilty beyond a reasonable doubt" that ought to be sufficient. No definition of reasonable doubt should be given. Definitions lead to comments on the evidence and efforts to get an edge one way or the other.

Here, for example, the definition qualifies and changes reasonable doubt to substantial doubt if applied to acquittal, while leaving it at reasonable doubt if applied to conviction. This does not seem to me to be an even-handed application of the rules of the contest between the contending parties. "Reasonable" and "substantial" are not synonymous, as can be seen by referring to any of the standard dictionaries. The point was well put by counsel in argument recently where he pointed out that if one had to undergo a serious operation and were querying the doctor as to the prospects for a successful outcome, how differently the person would feel if the doctor told him there was only a reasonable chance of success as opposed to being told there was a substantial chance of success.

It is noteworthy that the instruction as now phrased is invariably requested by the state and opposed by the defendant. While empirical knowledge is hard to come by in a question of this sort, it would seem the practical effect of this instruction would be to strengthen the state's chances of doing no worse than a hung jury and to reduce the defendant's chances of doing better than a hung jury.

I would be in favor of eliminating from future instructions on reasonable doubt this qualification that it must be a substantial doubt to acquit.